**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ELDON A. GREGORY,            )<br>                              )<br>     Plaintiff,              )<br>                              )<br>vs.                           )<br>                              )<br>                              )<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security,              )<br>                              )<br>     Defendant.              )<br>_____ ) | No. CV-08-0387-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the Motion for Summary Judgment of Plaintiff Eldon A. Gregory (Dkt. # 16) and the Answering Brief of Defendant Michael J. Astrue, Commissioner of Social Security (Dkt. # 25), which the Court interprets as a Cross-Motion for Summary Judgment.[1]

---

[1] Before December 1, 2008, the proper procedure for briefing Social Security cases in this District was by bringing motions and cross-motions for summary judgment. Effective December 1, 2008, the District's local rules were changed to require the parties to file opening, answering, and reply briefs. *See* LRCiv 16.1. Because Plaintiff filed his brief before the change to the local rules became effective, he styled his brief as a motion for summary judgment. Defendant, however, filed his brief after the change became effective and thus styled his response as an answering brief. In order to reconcile this disparity, the Court construes Defendant's answering brief as a cross-motion for summary judgment. The Court notes that the procedural posture will not alter the ultimate disposition of the case.

For the reasons set forth below, the Court grants in part and denies in part both motions.[2]

## BACKGROUND

On February 18, 2005, Plaintiff applied for supplemental security income, alleging a disability onset date of December 12, 2002. (R. at 47, 50.) Plaintiff's claim was denied both initially and upon reconsideration. (R. at 43-45; R. at 39-41.) Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (R. at 38.) The ALJ conducted a hearing on the matter on August 8, 2006. (R. at 434-58.)

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[3] (R. at 15-21.) At step one, the ALJ

---

[2] Plaintiff has requested oral argument. That request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[3] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income benefits). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations

1  determined that Plaintiff had not engaged in substantial gainful activity. (R. at 17.) At step
2  two, the ALJ determined that Plaintiff suffered from the severe impairments of "gouty
3  arthritis, bunions on his feet, low back pain, and substance abuse with drug seeking
4  behavior."[4] (*Id.*) At step three, the ALJ determined that none of these impairments, either
5  alone or in combination, met or equaled any of the Social Security Administration's listed
6  impairments. (*Id.*)

7  At step four, the ALJ made a determination of Plaintiff's residual functional capacity
8  ("RFC"),[5] concluding that Plaintiff could perform sedentary work. (R. at 18.) Specifically,
9  the ALJ concluded that Plaintiff has the ability to sit for six hours in an eight-hour work day,
10 stand or walk for no more than three hours, and lift, carry, push, or pull twenty-five pounds
11 frequently and fifty pounds occasionally. (*Id.*) The ALJ also determined that Plaintiff is
12 unable to climb ladders, ropes, or scaffolds, and is only occasionally able to climb ramps and
13 stairs, and to balance, stoop, kneel, crouch, and crawl. (*Id.*) The ALJ further found that
14 Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation,
15 and hazards such as machinery and heights. (*Id.*) Based on this RFC, the ALJ found that
16 Plaintiff could not perform his past relevant work. (R. at 20.) The ALJ therefore reached
17 step five, determining under Medical-Vocational Rule 201.25 that Plaintiff could perform
18 a significant number of other jobs in the national economy that met his RFC limitations. (*Id.*)
19 Given this analysis, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

20 The Appeals Council declined to review the decision. (R. at 5-7.) Plaintiff filed the
21 complaint underlying this action on February 28, 2008, seeking this Court's review of the

---

omitted).

[4]The ALJ found that Plaintiff's arm injury and generalized anxiety were not severe impairments (R. at 17), and Plaintiff does not challenge those findings (*see* Dkt. # 21 at 3).

[5]RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

1  ALJ's denial of benefits.[6] (Dkt. # 1.) Plaintiff filed his Motion for Summary Judgment on
2  November 12, 2008. (Dkt. # 16.) Defendant filed his Answering Brief, which the Court
3  interprets as a cross-motion for summary judgment, on February 3, 2009. (Dkt. # 25.)

## DISCUSSION

### I.   Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

### II.  Analysis

Plaintiff argues that the ALJ erred at step five of the sequential evaluation process by: (A) failing to properly weigh the opinion of Dr. Chirban, Plaintiff's treating physician (Dkt.

---

[6] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

- 4 -

# 21 at 4-12), (B) failing to properly consider Plaintiff's subjective complaint testimony (*id.* at 12-16), and (C) failing to properly apply the Medical-Vocational Guidelines (*id.* at 16-17). The Court will address each argument in turn.[7]

### A.     Treating Physician Testimony

Plaintiff first argues that the ALJ failed to properly weigh the opinion of Dr. Chirban, his treating physician.[8] (Dkt. # 21 at 4-12.) "The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). Such an opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

---

[7]Apparently to comply with the District's page and spacing limitations, Plaintiff's attorney liberally employs lengthy block quotations throughout his memorandum. In fact, nearly a third of his memorandum is comprised of such quotations, including one block quotation exceeding three pages in length that recapitulates Plaintiff's argument to the Appeals Council. (*See* Dkt. # 21 at 5-8.) The Court has previously counseled Plaintiff's attorney against seeking to frustrate the District's page and spacing limitations through similar formatting legerdemain. *See Walraven v. Astrue*, No. CV07-02041-PHX-GMS, 2008 WL 5427735, at *2 n.5 (D. Ariz. Dec. 31, 2008) (pointing out the impropriety of presenting substantive arguments in small-font footnotes). While the Court appreciates that Plaintiff's attorney may be attempting to advance the interests of his clients in whatever way possible, such gimmickry taxes the patience (and the eyesight) of the Court and, more importantly, compromises the fairness of a briefing process in which all parties should have the same opportunity to present their arguments, irrespective of their creative capacity to manipulate drafting conventions. The Court again instructs Plaintiff's attorney to adhere to both the letter and the spirit of the Court's local rules in his future filings.

[8]The parties argue, somewhat obliquely, about whether Dr. Chirban is a treating physician given that he only saw Plaintiff twice. (Dkt. # 25 at 5; Dkt. # 26 at 3.) The Ninth Circuit has previously conferred treating status on a physician who only saw a claimant twice. *See Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994). Regardless, the ALJ concluded that Dr. Chirban was "treating the claimant." (R. at 19.) Because the ALJ did not assign lesser weight to Dr. Chirban's opinion under the theory that he was not treating Plaintiff, the Court cannot affirm the ALJ's conclusion under such a theory. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). The Court will therefore assume that Dr. Chirban was a treating physician.

- 5 -

1  in [the] case record." 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2). If the opinion
2  is not well-supported by such techniques, or is inconsistent with other substantial evidence
3  in the record, then the opinion will be weighed in light of several factors: (1) the length of
4  the treatment relationship and the frequency of examination, (2) the nature and extent of the
5  treatment relationship, (3) supportability by explanation and reference to relevant evidence,
6  (4) consistency with the record as a whole, (5) specialization, and (6) any other factors
7  tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d); 20 C.F.R.§
8  416.927(d).

9  If the treating physician's opinion is not contradicted by the opinion of another doctor,
10 it may be rejected only for clear and convincing reasons supported by substantial evidence
11 in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Likewise, the treating
12 physician's ultimate conclusions may only be rejected for clear and convincing reasons
13 supported by substantial evidence. *Id.* If the treating physician's opinion is contradicted by
14 the opinion of another physician, it may be rejected upon specific and legitimate reasons
15 supported by substantial evidence in the record. *Id.* "The ALJ can meet this burden by
16 setting out a detailed and thorough summary of the facts and conflicting clinical evidence,
17 stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation
18 omitted).

19 An examining physician's opinion can, in and of itself, constitute substantial evidence
20 to reject the opinion of a treating physician if the examining physician's opinion is based on
21 independent clinical findings that differ from the findings of the treating physician. *Orn*, 495
22 F.3d at 632. If the examining physician relies on the same findings as the treating physician,
23 and differs only in his conclusions, then the examining physician's opinion cannot inherently
24 be substantial evidence. *Id.* However, the "substantial evidence" threshold necessary to
25 reject the opinion of a treating physician can be reached by the opinion of even a non-
26 examining physician in concert with an abundance of evidence in the record. *See Lester*, 81
27 F.3d at 831.

28

1    In this case, Dr. Chirban offered opinions dated December 27, 2005 (R. at 359-60), 2 and June 30, 2006 (R. at 374-75).  Both provided that Plaintiff suffered impairments that 3 would prevent regular, consistent, and sustained work.  (R. at 359, 374.)  Specifically, Dr. 4 Chirban opined that, in an eight-hour workday, Plaintiff could sit for less than three hours, 5 stand for less than two hours, and walk for less than one hour, and that he could lift and carry 6 less than ten pounds.  (*Id.*)  Dr. Chirban also stated that Plaintiff could not crawl, climb, 7 stoop, crouch, or kneel, and could only occasionally balance, bend, and make repetitive use 8 of his feet.  (*Id.*)  Dr. Chirban further noted that Plaintiff was moderately limited by his pain, 9 his difficulty concentrating, and his confusion (a medication side-effect).  (R. at 360, 375.)

10    The ALJ concluded that Dr. Chirban's proposed limitations on sitting, standing, and 11 walking were not supported by, and were inconsistent with, a variety of evidence in the 12 record.  (R. at 19.)  The ALJ relied on objective medical tests, such as a lumbar spine x-ray 13 from June 29, 2006, which was normal.  (*See* R. at 426.)  The ALJ also looked to other 14 physicians' opinions.  The ALJ noted that Plaintiff's primary care physician, Dr. Lyons, 15 expressly refused to sign a disability form (that Plaintiff had filled out himself) stating that 16 Plaintiff was disabled.  (*See* R. at 173.)  The ALJ also relied on the report of Plaintiff's 17 rheumatologist, Dr. Mallace, which stated that Plaintiff's gout was clinically stable.  (*See* R. 18 at 155.)

19    Further, the ALJ found Dr. Chirban's testimony internally unreliable.  The ALJ was 20 initially skeptical of Dr. Chirban's opinion because he was treating Plaintiff only for pain 21 management, and thus "needed to accept many of the oral complaints . . . without objective 22 testing."  (R. at 19.)  The ALJ then noted that nothing in Dr. Chirban's records indicated the 23 specific level of severity to which Dr. Chirban testified.  (*See* R. at 354-60.)  The ALJ also 24 attributed significance to the fact that Dr. Chirban's physical capacities assessment from June 25 30, 2006, included residual effects of Plaintiff's surgery for his arm fracture, which, as 26 Plaintiff does not dispute, did not meet the durational requirement for disability and thus was 27 not a proper subject of consideration.  (*See* R. at 374-75.)  Additionally, the ALJ found Dr. 28 Chirban's opinions unreliable because they fail to mention Plaintiff's breach of the pain

1 agreement and drug-seeking behavior, which is discussed in a treatment note from June 16,
2 2006. (R. at 369.) As the ALJ pointed out, another of Plaintiff's physicians, Dr. Zoltan,
3 detailed Plaintiff's practice of going to emergency rooms to receive pain medication (even
4 though he was under prescription elsewhere), denying the behavior when questioned by his
5 doctors, and then eventually admitting to having sought narcotic pain medication. (R. at 387-
6 88.)

7 Finally, the ALJ relied on the opinion of the state agency medical consultant, dated
8 April 15, 2005. (*See* R. at 303-10.) The consultant determined that Plaintiff could lift
9 twenty-five pounds frequently and fifty pounds occasionally, could stand or walk no more
10 than three hours in an eight-hour workday, and could sit for about six hours in an eight-hour
11 workday. (R. at 304.) The consultant further opined that Plaintiff could never climb ladders,
12 ropes, or scaffolds, and that he was occasionally limited in balancing, stooping, kneeling,
13 crouching, and crawling. (R. at 305.) The consultant also noted that Plaintiff should avoid
14 concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation, as well as hazards
15 such as machinery and heights. (R. at 307.) The ALJ found this opinion to be highly
16 credible, particularly because the consultant focused on Plaintiff's foot issues, which were
17 the main problems dating back to the filing of his application. (*See* R. at 303-10; R. at 123-
18 302.) On that basis, the ALJ assigned this opinion more weight than both Dr. Chirban's
19 opinion and the opinion of another state agency physician (who had, in fact, concluded that
20 Plaintiff had essentially no limitations on his work capacity). (*See* R. at 361-68.)

21 The ALJ did not err in rejecting Dr. Chirban's opinion. As Plaintiff points out, there
22 is some evidence in the record that could be construed as consistent with Dr. Chirban's
23 opinion. (*See* Dkt. # 21 at 10-11.) However, the contrary evidence discussed by the ALJ,
24 including objective medical tests, conflicting physician testimony, and inconsistencies and
25 omissions within Dr. Chirban's opinion and treatment notes, is supported by the record and
26 could rationally be viewed as substantial evidence inconsistent with Dr. Chirban's opinion.
27 Thus, the only remaining question was the weight to assign to Dr. Chirban's opinion, and the
28 ALJ provided clear and convincing reasons supported by substantial evidence in the record

1 for assigning it little weight. *See Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003) (affirming the ALJ's rejection of a treating physician's opinion because that opinion was internally inconsistent, inconsistent with other medical opinions, and provided limitations not supported by the physician's treatment notes).

Plaintiff's argument to the contrary merely solicits the Court to re-weigh the evidence. Plaintiff argues that "[t]he ALJ's reasoning is flawed" because the state agency consultant was not a treating or examining physician, did not explicitly identify the records on which he was relying, and offered an opinion before some of the other evidence in the record was available.[9] (Dkt. # 21 at 11.) Plaintiff thus argues that the consultant's opinion was less persuasive than Dr. Chirban's opinion. Weighing the evidence, however, is the province of the ALJ, and as long as the ALJ's inferences are reasonable this Court must defer to them. *Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1198; *Matney*, 981 F.2d at 1019. The ALJ's conclusion that the conflicting evidence undermined the credibility of Dr. Chirban's opinion was reasonable, and thus the Court will not disturb it.

The ALJ gave a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation thereof, and made findings. *See Embrey*, 849 F.2d at 421. He gave clear and convincing reasons for doing so, and those reasons are supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830. Thus, the ALJ did not err in discounting Dr. Chirban's opinion.

---

[9]Plaintiff also points out that "the State Agency physician's signature is illegible." (Dkt. # 21 at 11.) While the Court finds Plaintiff's characterization of the signature reasonable (*see* R. at 310), Plaintiff does not attach any legal argument to that statement and does not assert that the document is inauthentic. The Court therefore interprets Plaintiff's argument in this regard as merely going to the weight of the evidence, which is not the Court's purview. *Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1198; *Matney*, 981 F.2d at 1019.

**B.     Subjective Complaint Testimony**

Plaintiff argues that the ALJ failed to properly consider his subjective complaints. (Dkt. # 21 at 12-16.) "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Specifically:

> The ALJ may consider at least the following factors when weighing the claimant's credibility: [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas*, 278 F.3d at 958-59 (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Id.* at 958.

In this case, the ALJ found that Plaintiff's subjective complaints that he was totally disabled were not entirely credible. (R. at 19-20.) The ALJ first found Plaintiff's testimony to be exaggerated. (*See* R. at 91-98, 441-57.) The ALJ next cited evidence that Plaintiff had engaged in drug-seeking behavior, which the ALJ took as an indication that many of Plaintiff's subjective complaints were made not because they were true, but because they might lead to further medication. (*See* R. at 369, 387-88.) Finally, the ALJ found Plaintiff's alleged limitation to staying in bed inconsistent with the bulk of the evidence regarding

Plaintiff's activities of daily living. (*See* R. at 91-98.) Plaintiff disputes these findings on several levels.[10]

First, Plaintiff argues that the ALJ erred by concluding that Plaintiff engaged in drug-seeking behavior, reasoning that Plaintiff's medication caused the side-effect of confusion, which could account for his attempts to obtain narcotic pain medication even though he was already receiving such medication from his treating physicians. (Dkt. # 21 at 14-15.) While Plaintiff offers a reasonable explanation of the evidence, the ALJ's conclusion that Plaintiff engaged in drug-seeking behavior by repeatedly soliciting narcotic pain medication when he was already under prescription is entirely reasonable. (*See* R. at 369, 387-88.) Evidence of drug-seeking behavior may contribute to an adverse credibility finding. *See Berger v. Astrue*, 516 F.3d 539, 545-46 (7th Cir. 2008) (affirming an ALJ's determination that the claimant was not credible because of his drug-seeking behavior); *cf. Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (affirming the ALJ's denial of benefits where the ALJ determined that

---

[10]Plaintiff also takes issue with the ALJ's conclusion that Plaintiff's credibility was diminished because he failed to report feeling any foot or back pain to Dr. Zoltan, who treated Plaintiff for an arm fracture on April 17, 2006, and in fact told Dr. Zoltan that he was otherwise "in good health." (R. at 389-90.) Plaintiff argues that this was error because on the date in question "Dr. Zoltan was advised by [Plaintiff] of a 'long history of back pain' and that he is status post 'bilateral foot surgery.'" (Dkt. # 21 at 14 (citing R. at 391-92).) The record Plaintiff cites, however, is not a report by Dr. Zoltan, but rather a report by Michelle Pollack, a physician assistant. (*See* R. at 391-93.) The record cited by the ALJ, which is Dr. Zoltan's treatment note, does not contain the information to which Plaintiff alludes. Thus, Plaintiff's argument is incorrect. (*See* R. at 389-90.) Regardless, the report by Ms. Pollack does not provide that Plaintiff complained of back and foot pain, or even that Plaintiff was the one who reported having a history of such pain; the record merely provides in the "history of present illness" section that Plaintiff has a "history of back pain," and in the "past surgical history" section that he had "bilateral feet" surgery. (R. at 391-92.) Thus, the ALJ's statement is not in error. Moreover, it does not appear that the ALJ even considered this point as part of his credibility determination for Plaintiff's subjective complaints, as it appears in the ALJ's earlier narrative discussion and not in his substantive analysis section. (*See* R. at 18-20.) Thus, even if the ALJ did err, such error would be harmless. *See Batson*, 359 F.3d at 1197 (explaining that an ALJ's error is harmless if it does not affect his ultimate conclusion).

1 the claimant was not credible based on evidence of drug-seeking behavior). Thus, the ALJ
2 did not err on this point.

3 Plaintiff also objects to the ALJ's interpretation of a daily activities report in which
4 Plaintiff answered the question "Describe what you do from the time you wake up until going
5 to bed" with the response: "Stay in bed. I am in very much pain." (R. at 91.) The ALJ
6 found Plaintiff not entirely credible because it is clear from the rest of the record that Plaintiff
7 does get out of bed; in fact, as Plaintiff himself points out, Plaintiff reported engaging in
8 activities such as cooking and cleaning in the very same daily activities report. (R. at 92-95.)
9 Plaintiff argues that the ALJ failed to consider the function report as a whole because he
10 considered only Plaintiff's statement that he did not get out of bed and not Plaintiff's report
11 of activities that were not in bed. (Dkt. # 21 at 14.) However, it is clear from the fact that
12 the ALJ found inconsistency on this point that he did consider the elements of the report to
13 which Plaintiff refers. What Plaintiff really seems to be arguing is that the ALJ should have
14 reconciled Plaintiff's statement that he did not get out of bed as being somehow consistent
15 with the evidence that he did get out of bed, and therefore should not have considered it
16 conflicting evidence from which an inference of incredibility could be made. However, the
17 ALJ's conclusion that Plaintiff offered inconsistent testimony is entirely reasonable, and thus
18 the Court will not overturn it.[11]

---

[11] Plaintiff also seems to utilize the same reasoning when he argues that the ALJ erred in concluding that Plaintiff's testimony was "exaggerated." (*See* Dkt. # 21 at 14 ("It appears that the ALJ finds exaggeration based on the portion of the function report where [Plaintiff] states that he stays in bed.").) To the extent Plaintiff makes such an argument, the Court disagrees for the same reasons discussed above. However, the ALJ's statement about Plaintiff's exaggeration may also be directed at Plaintiff's hearing testimony, and not at other elements of the record. To the extent Plaintiff objects to the ALJ's interpretation of his hearing testimony, the Court finds no error. An ALJ may conclude that a claimant's exaggerations undermine the credibility of his subjective complaint testimony. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (affirming an ALJ's decision to find the claimant's subjective complaints of disabling pain not credible based on the fact that the claimant's "testimony at the hearing appeared to be somewhat exaggerated . . . and appeared somewhat self-serving"). Here, the ALJ's conclusion that Plaintiff's testimony was exaggerated was reasonable, as thus not in error.

- 12 -

1	Plaintiff's final argument of this section is that his daily activities – cooking, cleaning,
2	going to appointments, and caring for his mother (R. at 91-95) – are not transferrable to a
3	work setting, and thus that the ALJ erred in relying on them in finding that Plaintiff's
4	assertions of totally disabling pain were not credible. (Dkt. # 21 at 15-16.)  However, the
5	ALJ appears merely to have concluded that these activities were inconsistent with Plaintiff's
6	other testimony about not getting out of bed. (*See* R. at 19-20.) Inconsistency with other
7	testimony is one of the grounds on which an ALJ may permissibly rely in making an adverse
8	credibility determination. *See Orn*, 495 F.3d at 639 ("Neither of the two grounds for using
9	daily activities to form the basis of an adverse credibility determination are present in Orn's
10	case.  First, as he described them, Orn's activities do not contradict his other testimony.
11	Second, Orn's activities do not meet the threshold for transferable work skills, the second
12	ground for using daily activities in credibility determinations."). Regardless, the testimony
13	to which Plaintiff refers amounts to evidence of household chores, and a claimant's capacity
14	to perform household chores may form the basis of an adverse credibility finding when the
15	claimant asserts totally disabling subjective complaints. *See Thomas*, 278 F.3d at 959
16	(affirming an ALJ's rejection of subjective complaint testimony based on the ALJ's
17	conclusion that the claimant's ability to perform "various household chores such as cooking,
18	laundry, washing dishes, and shopping" rendered her complaints of totally disabling pain not
19	credible).  The Court therefore finds no error.

20	**C.	Medical-Vocational Guidelines**

21	Last, Plaintiff argues that the ALJ should not have determined that he was not disabled
22	under Medical-Vocational Rule 201.25.[12] (Dkt. # 21 at 16-17.) That Rule dictates a finding
23	of "not disabled" if a claimant is between the ages of 18 and 44, has a limited education, and
24	has non-transferrable skilled or semiskilled previous work experience.  20 C.F.R. Pt. 404,
25	Subpt. P, App'x 2, § 201.25. Plaintiff does not dispute that he would be disabled under Rule

---

[12] "The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The tables presented therein are commonly referred to as "grids." *See id.*

- 13 -

1  201.25, but rather argues that the ALJ should have relied on a vocational expert, and not the
2  grids, because the grids do not cover claimants with less than a full range of a given
3  exertional capacity (in this case, sedentary work).

4  There are two ways for the Social Security Administration to meet its burden at step
5  five of the sequential evaluation: (1) through the testimony of a vocational expert, and (2) by
6  reference to the Medical-Vocational Guidelines. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162
7  (9th Cir. 2001). "The [Social Security Administration's] need for efficiency justifies use of
8  the grids at step five where they *completely and accurately* represent a claimant's limitations.
9  In other words, a claimant *must* be able to perform the *full range* of jobs in a given category,
10  i.e., sedentary work, light work, or medium work." *Tackett*, 180 F.3d at 1101 (internal
11  citation omitted and second emphasis added); *see also* S.S.R. 83-12 (1983) ("The table rules
12  do not direct ['disabled' or 'not disabled'] conclusions when an individual's exertional RFC
13  does not coincide with the exertional criteria of any one of the external ranges . . . ."). "If the
14  grids fail accurately to describe a claimant's particular limitations, [the ALJ] may not rely
15  on the grids alone to show the availability of jobs for the claimant." *Jones v. Heckler*, 760
16  F.2d 993, 998 (9th Cir. 1985).

17  In this case, the ALJ determined that Plaintiff could perform less than the full range
18  of sedentary work. (R. at 18.)  Specifically, the ALJ found Plaintiff: (1) unable to climb
19  ladders, ropes, or scaffolds; (2) only occasionally able to climb ramps and stairs and to
20  balance, stoop, kneel, crouch, and crawl; and (3) unable to work around concentrated fumes,
21  odors, dusts, and gases, in areas with poor ventilation, and around hazards such as machinery
22  and heights. (*Id.*)  In a case such as this, the ALJ must evaluate whether or not the additional
23  limitations on the ability to perform sedentary work narrow the range of available jobs so that
24  the grids no longer fairly represent the occupational base for a worker with the claimant's
25  RFC. *See* S.S.R. 83-12 ("Where an individual exertional RFC does not coincide with the
26  definitions of any one of the ranges of work as defined in sections 404.1567 and 416.967 of
27  the regulations, the occupational base is affected and may or may not represent a significant
28  number of jobs in terms of the rules directing a conclusion as to disability. *The adjudicator*

- 14 -

*will consider the extent of any erosion of the occupational base and access* [sic] *its significance.*") (emphasis added); *see also Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988) ("[S]ignificant non-exertional impairments . . . may make reliance on the grids inappropriate. . . . The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. The ALJ must weigh conflicting evidence concerning the claimant's past work experience, education, and present psychological and physical impairments. The ALJ then applies the grids to these factors, ensuring that the final determination will be both consistent with other similar cases and expeditious.") (internal citations omitted).

Here, not only did the ALJ fail to consider and assess the effect of the additional limitations on the relevant Medical-Vocational Guidelines, but he failed to even mention the disparity between Plaintiff's specific limitations and the vocational predicates of Rule 201.25. (*See* R. at 20.) The ALJ therefore committed reversible error. *Boone v. Barnhart*, 353 F.3d 203, 210-11 (3d Cir. 2003) ("[W]e shall not interpret [S.S.R.] 83-12 to mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a [vocational expert] in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform. At the same time, however, the absence of those findings means that we are hindered in considering whether substantial evidence supports the ALJ's ultimate determination that Boone is not disabled. . . . Given that [S.S.R.] 83-12 suggests that Boone cannot perform most sedentary or light jobs . . . we cannot . . . assume that the ALJ's finding that Boone can perform a limited range of light work means that she can perform a significant number of jobs in the economy. Substantial evidence therefore does not support the ALJ's conclusion that the Commissioner met her burden of proof.").

Defendant's only argument to the contrary is that the limitations found by the ALJ do not necessarily preclude application of the grids because climbing, balancing, stooping, kneeling, crouching, and crawling are required "only occasionally" in sedentary jobs and because "few occupations" in the unskilled sedentary base require work with environmental

1  limitations. (Dkt. # 25 at 12-13.) As Defendant points out, social security rulings inform
2  ALJs that these general types of limitations are present only in a limited number of sedentary
3  positions. *See* S.S.R. 96-9p (July 2, 1996). However, the fact that such additional limitations
4  significantly erode the occupational base only in *limited* circumstances does not mean that
5  they *never* do so. In fact, it means just the opposite: that there are some circumstances in
6  which the occupational base of full sedentary work will be sufficiently eroded such that
7  reliance on the grids is improper. That is why, as the very social security ruling cited by
8  Defendant points out, the ALJ must consider and explain the impact of the additional
9  limitations on the occupational base:

> Whether the individual will be able to make an adjustment to other work requires adjudicative judgment regarding factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base . . . . Where there is more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country.

16 *Id.* The ALJ failed to make any such findings about erosion of the occupational base here.
17      Indeed, given that there have been no findings, the practical effect of affirming the
18 ALJ's reliance on the grids in these circumstances would be to hold either that the limitations
19 found by the ALJ are sufficiently rare such that they never significantly erode the
20 occupational base, or to hold that they presumably do not do so, and that claimants must
21 establish significant erosion in each specific case. The first holding would be contrary to
22 precedent, as the Ninth Circuit has held that some of the very limitations at issue here can
23 make reliance on the grids inappropriate. *See Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.
24 1984) ("Inability to tolerate dust or fumes is one example given in the guidelines of an
25 environmental restriction not factored into the Rules. . . . [T]he Guidelines are not
26 determinative of disability where, as here, a claimant cannot tolerate dust, fumes or heat.").
27 The second holding would effectively switch the burden of proof to social security claimants
28 to establish why these additional limitations render the grids inapplicable in their specific

1  cases. Because the burden is on the Social Security Administration at step five of the
2  sequential evaluation, *Tackett*, 180 F.3d at 1098, such a holding would be improper. Thus,
3  the Court finds Defendant's argument unpersuasive.

4  In sum, the fact that certain limitations will not preclude application of the grids in
5  most cases does not insulate an ALJ from having to analyze the effect of those limitations
6  in each specific case in which they could preclude application of the grids. Rather, the ALJ
7  is required to "consider the extent of any erosion of the occupational base and access [sic]
8  its significance." S.S.R. 83-12. By failing to do so here, the ALJ erred. Because the ALJ
9  provided no alternative analysis or findings under which the Court could find that error
10 harmless, the ALJ's step-five determination that Plaintiff is not disabled under Rule 201.25
11 must be vacated.

12 **III.   Remedy**

13 Having decided to vacate the ALJ's decision in part, the Court has the discretion to
14 remand the case either for further proceedings or for an award of benefits. *See Reddick v.*
15 *Chater*, 157 F.3d 715, 728 (9th Cir. 1998). Under this Circuit's "credit as true" doctrine, the
16 Court will:

17 > credit[] evidence and remand[] for an award of benefits where
> (1) the ALJ has failed to provide legally sufficient reasons for
18 > rejecting [certain] evidence, (2) there are no outstanding issues
> that must be resolved before a determination of disability can be
19 > made, and (3) it is clear from the record that the ALJ would be
> required to find the claimant disabled were such evidence
20 > credited.

21 *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). However, in this case the ALJ's error
22 was not in rejecting evidence, but rather in finding that Plaintiff was not disabled without
23 analyzing whether the grids should apply. Thus, there is no evidence to credit as true, and
24 the proper course of action is to remand for the ALJ to provide the requisite analysis. *See*
25 *Boone*, 353 F.3d at 211 (remanding for further proceedings where the ALJ failed to
26 determine whether the occupational base for the jobs the claimant could perform had been
27 eroded such that application of the grids was improper); *cf. Tackett*, 180 F.3d at 1104
28 (finding that the ALJ improperly relied on the grids at step five and remanding for further

1  proceedings); *Kail*, 722 F.2d at 1498 (same). Because it is not "clear from the record that the
2  ALJ would be required to find the claimant disabled," and because there remain "outstanding
3  issues that must be resolved before a determination of disability can be made," the Court will
4  remand for further proceedings. *Smolen*, 80 F.3d at 1292.

## CONCLUSION

The ALJ erred by finding Plaintiff not disabled under the Medical-Vocational Guidelines. On remand, the ALJ must consider the extent of any erosion of the occupational base caused by Plaintiff's non-exertional limitations and must assess its significance. If the ALJ finds that the occupational base has been eroded such that the grids are inapplicable, he should solicit specific testimony on the matter from a vocational expert.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. # 16) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Answering Brief (Dkt. # 25), which the Court interprets as a cross-motion for summary judgment, is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further proceedings.

DATED this 5th day of March, 2009.

_G. Murray Snow_
United States District Judge